UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Criminal Case No.  03-cr-00232-RPM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THOMAS ALAN BOYD,
JACK O. GRACE, JR.,
GLENN M. GALLANT, and
DOUGLAS R. BAETZ,

        Defendants.

---

CALCULATION OF ADVISORY GUIDELINES AND
ORDER SETTING SENTENCING HEARINGS

---

Pursuant to the directions of the Tenth Circuit Court of Appeals that the determination of a reasonable sentence under 18 U.S.C. § 3553 must begin with a calculation of an applicable sentencing range under the United States Sentencing Commission Guidelines Manual (U.S.S.G.) and following the hearing on June 6, 2007, at which the Court determined that the calculations shall be based on the evidentiary record of the jury and non-jury trials, the Court makes the following preliminary calculation of each defendant's guideline sentencing range which shall be considered as the equivalent of a presentence report required by Fed.R.Crim.P. 32(d)(1).

**Procedural History**

Following jury trial, a verdict was entered finding defendants Glenn M. Gallant and Douglas R. Baetz guilty of Counts 1, 2-15, 18-25, 27-44, 47-54, 55-60, 62, 65, 68-

70, 72-73, and 74 of the Second Superseding Indictment. Following the verdict, the Court granted the defendants' motion under Rule 29 for acquittal on Counts 2-15, Counts 18-25 and Counts 27-31.

The statutory penalties for the counts of conviction for these two defendants are as follows:

| | |
|---|---|
| Count 1 | Conspiracy<br>18 U.S.C. § 371<br>NMT 5 years; NMT $250,000 fine, or twice the loss or gain from the offense; NMT 3 years supervised release; $100 special assessment<br>Class D Felony<br>Date of Offense: 1994 to August, 1998 |
| Counts 32-44 | Bank Fraud<br>18 U.S.C. § 1344<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: January, 1995 to July 22, 1998 |
| Counts 47-54 | False Bank Reports<br>18 U.S.C. § 1005<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: July 28, 1995, to April 30, 1998 |
| Counts 55-60, 62, 65, 68-70, 72-73 | Wire Fraud<br>18 U.S.C. § 1343<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: October 20, 1997, to July 10, 1998 |
| Count 74 | Continuing Financial Crimes Enterprise<br>18 U.S.C. § 225<br>NMT 10 years and NMT life; NMT $10,000,000 fine, |

>or twice the loss or gain from the offense; NMT 5
>years supervised release; $100 special assessment
>Class A Felony
>Date of Offense: 1994 to July, 1998

After the jury verdict as to defendants Baetz and Gallant, presentence reports were prepared, dated October 4, 2005, with three subsequent addenda. On February 22, 2006, the government filed its Memorandum of Positions and Evidence Concerning Sentencing Issues Re: Gallant and Baetz. On March 3, 2006, defendants Baetz and Gallant filed a motion for discovery, disclosure and production of materials relevant to the government's sentencing statement and the government filed its response on March 10, 2006. On March 16, 2006, the defendants Baetz and Gallant filed their responses to the government's memorandum. On June 5, 2006, this Court entered an order delaying the sentencing of defendants Baetz and Gallant pending trial of the bank officer defendants.

After a non-jury trial, the Court entered findings pursuant to Fed.R.Crim.P. 23(c) as to the defendants Edward P. Mattar, III, T. Alan Boyd, and Jack O. Grace, Jr., resulting in their convictions on Counts 1, 26-31, 53 and 54, 58, 59, 60 and 62-64, finding violations of 18 U.S.C. § 371, § 1344, § 1005, § 1343. The statutory penalties for those counts are as follows:

>Count 1           Conspiracy
>                  18 U.S.C. § 371
>                  NMT 5 years; NMT $250,000 fine, or twice the loss
>                  or gain from the offense; NMT 3 years supervised
>                  release; $100 special assessment
>                  Class D Felony
>                  Date of Offense: January, 1998 to August, 1998
>
>Counts 26-31      Bank Fraud

|  |  |
|---|---|
|  | 18 U.S.C. § 1344<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: January, 1998 to July 22, 1998 |
| Counts 53-54 | False Bank Reports<br>18 U.S.C. § 1005<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: January, 1998, to April 30, 1998 |
| Counts 58-60, 62-64 | False Bank Reports<br>18 U.S.C. § 1005<br>NMT 30 years; NMT $1,000,000 fine, or twice the loss or gain from the offense; NMT 5 years supervised release; $100 special assessment<br>Class B Felony<br>Date of Offenses: April, 1998, to July 22, 1998 |

Following the entry of findings on February 12, 2007, the Court held a hearing on February 21, 2007, with counsel for the government and all defendants, resulting in orders requiring the government to file updated position statements with respect to all defendants by March 14, 2007, with the defendants' replies due April 4, 2007. The government's statement as to sentencing was filed on March 14, 2007, and each of the defendants filed their respective responses. An Order Establishing Sentencing Procedures was entered on April 16, 2007, to which the government filed an objection on May 1st, 2007. That objection was heard on June 6, 2007, and all counsel agreed that the Court would calculate a guidelines sentencing range and then counsel would submit their written objections to be considered at sentencing hearings. The Court

granted Mattar's motion to postpone his sentencing until after resolution of Counts 91 through 94, charging him alone. Those counts are set for trial to begin on August 6, 2007.

It is agreed that the United States Sentencing Commission Guidelines Manual for 1997 is applicable and that the counts of conviction should be grouped pursuant to U.S.S.G. § 3D1.2(d), Comment (n.6), and that all counts are considered under § 2F1.1, Offenses Involving Fraud.

**Offense Level Computations**

Base Offense Level			6

Specific Offense Characteristics

§ 2F1.1(b) directs that the offense level is increased incrementally according to the amount of the loss exceeding $2,000. Application Note 7 refers to the discussion in the Commentary to § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft) and provides that, as in theft cases, loss is the value of the money, property or services unlawfully taken.

The Commentary to § 2B1.1, Application Note 2, defines loss as "the value of the property taken, damaged or destroyed" and then gives examples. Notably, it cross references to the Commentary to § 2F1.1 where the offense involved making a fraudulent loan "or other unlawful conduct involving a loan or credit card."

Application Note 7(a) for § 2F1.1 provides that for fraud involving the misrepresentation of the value of an item that does have some value, as for example "stock", the loss is the amount by which the stock is overvalued. Application Note 7(b),

referring to fraudulent loan applications provides as follows:

> In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss).  For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount of the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan.  However, where the intended loss is greater than the actual loss, the intended loss is to be used.

The essence of the wrongful conduct reflected in all of the counts of conviction for all of the defendants is that BestBank was making loans to Century based on representations that credit cards had been issued to applicants who qualified for them; that payments were being made timely on those accounts; and that Century would indemnify the Bank for losses from non-performing accounts.  Those representations were both false and true, that is, there were accounts recorded that were invalid from the beginning and there were accounts falsely reported as performing; but, there were also valid and performing accounts.  Century did pay substantial amounts for non-performing accounts and the extent to which it could pay additional indemnification at the time of the Bank's closure cannot be determined from the record before this Court.

The amount of losses caused by the defendants cannot be calculated by any formula that fairly considers their individual roles in the offenses and the intervention by the bank regulators and the FDIC as receiver.  That is illustrated by the government's varying suggestions.  All of them are based on considerations of consequential losses resulting from the Bank's closure. In *United States v. Izydora,* 167 F.3d 213, 223 (5th Cir. 1999) the Fifth Circuit Court of Appeals wrote a persuasive analysis of this

guideline resulting in the conclusion that consequential losses should not be considered in a case of wire fraud and bankruptcy fraud.  Thus, there the bankruptcy trustee's fees were erroneously included by the trial court.  That case is analagous.

The fraud in this case is the concealment of the multiple failures of performance of the Marketing Agreement by Century after the All Around Travel Club membership program became operational.  Baetz and Gallant initiated the manipulation of performance data to disguise those failures from the bank officer defendants.  When they became aware of the falsity in the data underlying the Bank's records, the Bank officers became active participants in the falsification of the Bank's records and reports.  While co-conspirators may be liable for the criminal acts of all those with whom they conspire, fairness in sentencing requires that some consideration be given to their individual culpability.  Under the Guidelines matrix, that can be done by measuring the amount of the loss according to what each of them received.

From the spreadsheets prepared by Dana Chamberlin, an employee of the U. S. Attorney's office, payroll payments made to Baetz from August 1, 1996, through July 23, 1998, totaled $6,519,592 (Ex. 737) and other payments to or for him from Century's general ledger were $5,084,587 for the same period.  (Ex. 738) Thus, his gross receipts were $11,604,179.  Ms. Chamberlin calculated payroll payments to Glenn Gallant of $6,429,049 and other payments of $5,318,042 for a total of $11,747,091 for the same period.  (Ex. 745)

Although there were legitimate aspects to Century's business with BestBank, these gross receipts are appropriate measures of loss as reasonable estimates.  Thus,

7

under U.S.S.G. § 2F1.1, an addition of 15 levels raises the offense level to 21.

The bank officer defendants are responsible for loss in the amount of their bonuses. Evidence at trial established that Boyd took bonuses in the amount of $4,743,909. His offense level is increased by 13 levels to 19. Grace received bonuses in the amount of $25,000 and $92,643 for a total of $117,643. His offense level is increased by 6 levels to 12.

Under 2F1.1(b)(2), if the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, the offense level is increased by 2 levels. The offenses of conviction involved more than minimal planning, and each defendant's offense level should be increased two levels pursuant to § 2F1.1(b)(2).

Pursuant to 2F1.1(b)(6)(A) and (B) the offense level is increased by 4, or to level 24 if the offense level is less than 24, if the offense substantially jeopardized the safety and soundness of a financial institution; or affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense. Evidence at trial established that as to each defendant the offense conduct jeopardized the safety and soundness of BestBank. The offense level is increased to 24.

Based upon the defendant's role in the offense, the offense level is increased by 4 levels if the defendant was an organizer or leader of a criminal activity that involved 5 or more participants or was otherwise extensive, U.S.S.G. § 3B1.1(a), or by 3 levels if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(b). The participants need not all be guilty of the crime. Many employees of

Century and BestBank were required to accomplish the deception in this case. Each defendant's offense level is increased by four levels under this section, except for Grace, who was a supervisor but not an organizer or leader. The 3 level increase is applicable to Grace.

The government also argues that the bank officers abused positions of trust, so that their role in the offense should be increased by two levels pursuant to § 3B1.3. That adjustment may not be employed if an abuse of trust is included in the determination of other specific offense characteristics and that is the case here where § 3B1.1(a) has been employed because of the positions held by these bank officers.

Based on the foregoing, the adjusted offense level is 31 for defendants Baetz and Gallant; the adjusted offense level is 29 for defendant Boyd; and the adjusted offense level is 27 for defendant Grace.

**Restitution**

Fed.R.Crim.P. 32(c)(1)(B) directs that the probation officer must conduct an investigation and submit a report that contains sufficient information for the Court to order restitution. The probation officer has been excused from that direction in this case because of the complexities, both legal and factual, involved in complying with 18 U.S.C. § 3663A as set forth in this order and in the Court's earlier orders of April 16, and May 11, 2007.

The initial step in applying the Mandatory Victim Restitution Act (MVRA) is the identification of victims of the offenses for which the defendants have been convicted. The prosecution has urged that restitution be paid to the FDIC, Cerberus Partners,

John Aspell and David Taffet.

John Aspell and members of his family seek recovery for losses claimed to result from the purchase and sale of Columbia Capital Corporation stock. These transactions were in July, 1998, after the closure of the Bank. At best they could be considered to be related to the conspiracy in Count One but they are based on the failure of the public filings by Century reflecting its financial condition. These claims are within a class action lawsuit in the Southern District of California. The claims are not sufficiently connected to any count of conviction to be considered under the MVRA.

David Taffet incurred expenses in an aborted effort to market the AATC credit card portfolio in June and July, 1998. Communications with him are the subject of wire fraud charges in Counts 68 through 70, 72 and 73. Only Baetz and Gallant were convicted on those counts. Although the jury was persuaded that there was a sufficiently developed and identified scheme to defraud him through misrepresentations and omissions concerning the value of the amounts, this Court disagreed in its findings in the trial of the bank officer defendants. That uncertainty is the basis for denying compensation to him in the form of restitution as a component of a criminal sentence. The statute in § 3663A(a)(2) defines "victim" as a person directly and proximately harmed by the offense and limits restitution to those "directly harmed" by the defendant's criminal conduct in the course of a scheme or conspiracy. Neither Aspell nor Taffet are within that definition.

Cerberus Partners could only be considered a victim of the offense of securities fraud charged in Count 90. None of the defendants was convicted on that charge.

FDIC. BestBank, a state chartered bank, whose deposits were insured by the Federal Deposit Insurance Corporation, was solely owned by defendant Mattar, who moved to dismiss the bank fraud charges as to him on the premise that he could not be guilty of defrauding himself. In denying that motion, this Court observed that the shareholder's interest is separate from the bank as a financial institution, which has other stakeholders, including the FDIC, depositors whose accounts exceeded the $100,000 insurance and creditors. The Bank is an institutional victim under the definition in § 3663A. As the appointed receiver, the FDIC assumed all of the assets of the Bank, which may be assumed to include the right to receive restitution. The FDIC sold the Bank's saleable assets to Pueblo Bank & Trust Co., and paid the depositors entitled to insurance. The FDIC claimed entitlement to restitution for all amounts it paid but did not deduct any amounts it received from the sale of assets. Government counsel concede that the FDIC claim is excessive. They argue that restitution should be measured by the estimated true value of the AATC loan portfolio and suggest that amount can be estimated by taking 25% of the face amount of that portfolio at the date of the Bank's closing on the assumption that it represents a fair estimate of the number of valid accounts.

In a recent opinion, the Tenth Circuit Court of Appeals repeated its holding in *United States v. Quarrell,* 310 F.3d 664 (10th Cir. 2002) that a restitution order must be based on the actual loss which the government bears the burden of proving, *United States v. Hudson,* 483 F.3d 707 (10th Cir. 2007). The approximations which may support the calculation of the amount of loss for determining the specific offense

characteristic for the Sentencing Guidelines may not be used to support a restitution order.

Following the hearing on June 6, 2007, the parties filed a Stipulation "concerning settlements in related civil actions." In 1998, the FDIC initiated a civil action, 98-M-2374, against defendants Mattar, Boyd, Effective Management Systems, Century Financial Group, Baetz and Gallant. Lori Boyd was also named as a defendant. The FDIC and Boyd entered into a settlement agreement providing that Boyd promised to pay the FDIC $1,000,000 within 30 days. Upon the FDIC's motion to find Boyd in violation of the settlement agreement, and after a hearing, this Court entered judgment against Thomas Alan Boyd and Lori Boyd, jointly and severally, for $1,012,712.50. Since then, Boyd has made payments totaling $457,000.00. Grace was not named a defendant in the FDIC civil litigation.

The civil action was stayed on October 10, 2002.

The procedural requirements for orders of restitution in § 3664 attempt to provide for the resolution of disputes as to the identity of victims and the amounts of their losses with a minimum of adversarial adjudication. While the inquiry into the financial resources of the defendant required in § 3664(d)(3) and (4) is not relevant to the order for restitution because of subsection (f)(1)(A), it is necessary for determining the manner and schedule of payments under subsection (f)(2) and (3) and § 3572. Compliance with those provisions would entail hearings.

Rule 32(b) directs the imposition of sentence "without unnecessary delay." Recognizing that a fair and just order of restitution in cases of such complexity as this

one is difficult and time consuming, Congress provided in § 3663A(c)(3)(B) that if the burden on the sentencing process outweighs the need to provide restitution to any victim due to determining complex issues of fact relating to the cause or amount of the victim's loss, the MVRA shall not apply.  That is the case with respect to the FDIC.  Civil Action No. 98-M-2374 will resume after sentencing in this case.  Accordingly, the FDIC will have a full opportunity to attempt to recover its losses in a civil damages remedy.  That action is itself complex and was pending before this criminal prosecution began.  The sentencing hearings for these defendants has already been long delayed.  Further delay to develop an order of restitution is not in the public interest.

## FORFEITURE

Count 95, seeking forfeiture under 18 U.S.C. § 982 was excluded from the jury by agreement in the trial of defendants Baetz and Gallant and reserved from the non-jury trial of the bank officer defendants.  Under that statute and Rule 32.2, the Court proposes to enter a final order of forfeiture at sentencing in the form of money judgments in the same amounts as the computation of the amount of loss attributed to each defendant in the calculation of the specific offense levels applicable to each.

Using the foregoing as the basis for proceeding with sentencing under Rule 32, it is

ORDERED, that objections under Rule 32(f) will be filed on or before July 27, 2007, and it is

FURTHER ORDERED, that sentencing of the defendants Baetz and Gallant will be on August 17, 2007, at 10:00 a.m. and it is

FURTHER ORDERED that sentencing of the defendants Boyd and Grace will be on August 24, 2007, at 10:00 a.m.

DATED: July 5th, 2007

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge